THE CITY OF CARTHAGE

*v.*

ROBERT MUNSELL.

*Opinion filed June 16, 1903.*

</div>

1. INTOXICATING LIQUORS—*sales—title passes on delivery to carrier although shipped C. O. D.* Title to intoxicating liquor to be shipped C. O. D. passes to the consignee by delivery to the express company, and the express agent at the point of destination is not guilty of violating an ordinance against the sale of liquor by delivering the consignment and collecting therefor. (*Carthage* v. *Duvall,* 202 Ill. 234, followed.)

2. SAME—*ordinance making delivery of liquor by carrier a sale is void.* An ordinance making the delivery of intoxicating liquor by a carrier to the consignee a sale of such liquor is void.

3. SAME—*delivery of consignment of liquor is not a nuisance per se.* The delivery by a carrier of a consignment of liquor to the consignee, where the carrier's agent collects and remits the purchase price, is not a nuisance *per se,* and can only become a nuisance from the manner of conducting the business.

*Munsell* v. *City of Carthage,* 105 Ill. App. 119, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Hancock county; the Hon. JOHN J. GLENN, Judge, presiding.

A. A. KELLEY, City Attorney, A. W. O'HARRA, and BERRY, McCRORY & KELLEY, for appellant.

WILLIAM H. HARTZELL, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an action of debt, brought by the city of Carthage against Robert Munsell for an alleged violation of a city ordinance. The suit was originally brought before a justice of the peace and from there appealed to the circuit court, and tried, without a jury, on an agreed state of facts, substantially as follows:

*First*—That the city of Carthage is a municipal corporation organized under the laws of the State of Illinois, situated in the county of Hancock, in the State of Illinois.

*Second*—That there was regularly passed and adopted by the city council of said city an ordinance, No. 176, and entitled "An ordinance to regulate, suppress and prohibit the selling, bartering, exchanging or giving away of vinous, malt, fermented, spirituous, alcoholic and intoxicating liquors within the city, and for other purposes therein named," and that the said ordinance was duly approved and published according to law and was in force at the time of this suit. Sections 1 and 2 of said ordinance, which were alleged to have been violated, were as follows:

"Sec. 1. *Be it ordained by the city council of the city of Carthage*, That it shall be unlawful for any person or persons to sell, barter, exchange or give away within said city, in a less quantity than five gallons, any brandy, whisky, rum, gin, wine, ale, beer, cider, or vinous, malt, fermented, spirituous, alcoholic or other intoxicating liquor, or any beverage or drink in which any of the aforesaid liquor is mixed or contained; and any person or persons so offending shall, upon conviction thereof, be fined in the sum of not less than $20 nor more than $100 for each and every offense.

"Sec. 2. That it shall be unlawful, and it is hereby declared a nuisance, for any express company, railroad company or any other common carrier, or any agent or employee of any such company or common carrier, or for any other person, whether a common carrier or not, to

deliver to any consignee, or to any other person or persons, any of the liquors, beverages or drinks mentioned in section 1 of this ordinance, in a less quantity than five gallons, in all cases where such company or common carrier, or any agent or employee of such company or common carrier, or other person so delivering such liquors, beverages or drinks, as a condition precedent to or contemporaneous with the delivery thereof, to collect for remittances to such consignor the consideration or purchase price therefor or any part thereof. And every such delivery of such liquors or beverages or drinks aforesaid, and the collection of the purchase price therefor or any part thereof, shall be deemed a sale of such liquors, drinks or beverages within the meaning of this ordinance, and every such company or common carrier, or agent or employee or other persons so delivering such liquors, beverages or drinks, upon conviction thereof shall be fined in any sum not less than $20 nor more than $100 for each and every offense."

*Third*—It is agreed that Robert Munsell was the agent of the Adams Express Company, transacting business for it at said city of Carthage, in said county and State, and that he continued to act as such agent from that time until the commencement of the suit, etc.

*Fourth*—That the said Adams Express Company is a co-partnership, organized for the purpose of acting as a common carrier of goods, wares, merchandise, etc.

Stipulation and agreement No. 5 shows that Robert Munsell was the agent of the Adams Express Company in Carthage, and during the latter part of December, 1901, several different parties ordered whisky from wholesale dealers in cities in other States and had the same expressed to them C. O. D., and that the agent, Munsell, collected the amount due, together with the charges for the return money and express charges, and that no more was collected than the actual C. O. D. charges, and that the agent had nothing whatever to do with the sale of

the liquor except to collect the money and return the
same to the proper parties.   It was further agreed that
unless the facts above set forth constitute a violation of
the city ordinance of said city, there are no other facts
upon which said Munsell could or would be liable for a
violation thereof; that unless the facts above set forth
make a sale under the law and under the said city ordi-
nance, then there was no sale made by the said Munsell
within the corporate limits of the said city.   The court
found the defendant guilty, and an appeal was taken to
the Appellate Court, which court reversed the decision
of the circuit court, and the city of Carthage appeals.

   The question as to the sale of intoxicating liquors in
this case is identical with the questions presented in the
case of *City of Carthage* v. *Duvall,* 202 Ill. 234, and what
we said in reference to such selling in that case is ap-
plicable to this case, so far as section 1 of the ordinance
in question is concerned, and disposes of the questions
arising here under said section 1.

   Section 2 of the ordinance in question has the double
aspect of declaring the delivery of intoxicating liquor in
less quantities than five gallons, by any, express com-
pany, railroad company or other common carrier, or by
any agent or employee of such company or common car-
rier, to the consignee, a nuisance, in all cases where the
carrier or person delivering is to collect and remit to the
consignor the purchase price, and also declaring such
transaction a sale of such liquor so delivered and col-
lected for, under section 1 of the ordinance.   The validity
of this section and the application of section 1 to the
facts involved were raised in the trial court by propo-
sitions of law presented to the court.   Section 2 of the
ordinance was not in force at the time of the trial of
the *Duvall case, supra,* but holding, as we did in that case,
that the agent of the express company who delivered
liquors sent C. O. D. was not guilty of selling intoxicat-
ing liquors, and that the title to the liquors purchased

vested in the consignee at the time of the delivery to the express company, and inasmuch as section 2 undertakes to declare that a delivery of liquors by any railroad company or other common carrier, and the collection of the purchase price by such company or carrier, shall be deemed a sale of such liquors, and thereby making that a sale which is not in law or in fact a sale, such section is in conflict with the law as interpreted by this court in the *Duvall case, supra,* and it is therefore void.

Nor do we think, under the agreed state of facts, that the delivery of such liquors transported from another State to purchasers in the city of Carthage, in this State, can be held to be a nuisance. In the case of *Laugel* v. *City of Bushnell,* 197 Ill. 20, we had before us the question of nuisances as applied to the sale of intoxicating liquors, and on page 26 we said: "Nuisances may thus be classified: First, those which in their nature are nuisances *per se* or are so denounced by the common law or by statute; second, those which in their nature are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.; third, those which in their nature may be nuisances but as to which there may be honest differences of opinion in impartial minds. The power granted by the statute to the governing bodies of municipal corporations to declare what shall be nuisances, and to abate the same, etc., authorizes such bodies to conclusively denounce those things falling within the first and third of these classes to be nuisances, but as to those things falling within the second class the power possessed is only to declare such of them to be nuisances as are in fact so."

As we view this case, under the stipulations in this record the transaction properly falls within the second class of nuisances as above classified, and could only become a nuisance from the manner in which it might be conducted, managed, etc. The right of the citizen to

purchase goods for his own consumption from dealers in other States, and the right to have those goods carried and delivered to him, are to be classed among the highest rights of the citizen, and can only be curtailed when, in the manner of conducting the business, they may endanger the health, life or property of other citizens. There is nothing in intoxicating liquor inherently dangerous. It can only be said to be dangerous to those who use it. It is not like explosives or dangerous drugs, that may carry with them a menace to the persons and property of others, and there is nothing in the stipulation to disclose that the business as conducted was other than the ordinary course in relation to the carrying and delivering of other articles of trade and commerce that might be, and ordinarily are, carried by such companies. In other words, there is nothing to show that in the method of delivery or in the manner of conducting the business there was anything that could be said to be offensive to the public morals or good order, or could in any way tend to disturb anybody in his tranquility of mind, health or body, safety or right of property. In the absence of such showing it cannot be successfully contended that such business or transaction may be declared to be a nuisance.

The trial court was asked by the plaintiff to hold as the law ten propositions, six of which were so held and four were refused. The defendant submitted seventeen propositions of law, each and all of which were refused. We do not deem it necessary to discuss these propositions separately. Under the stipulation of facts herein it was specifically agreed that unless the facts set forth constituted a sale there was no sale made. Holding, as we do, that defendant was not guilty and that section 2 of the ordinance was void, such holdings practically dispose of all the propositions asked by the respective parties.

We deem as correct the conclusion reached by the Appellate Court, and its judgment is therefore affirmed.

*Judgment affirmed.*